SO ORDERED: April 1, 2014.



**Robyn L. Moberly
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BOONE COUNTY UTILITIES, LLC | ) | CASE NO. 03-16707-RLM-11 |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| BOONE COUNTY UTILITIES, LLC | ) | |
| | ) | |
| Plaintiff | ) | Adversary Proceeding |
| vs. | ) | No. 12-50128 |
| | ) | |
| THE BRANHAM CORPORATION | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
PLAINTIFF'S MOTION TO DISMISS TREATED
AS A MOTION UNDER RULE 56**

Boone County Utilities, LLC's ("Debtor's") equity security holder, Newland Resources, Inc. ("Newland"), was paid nearly nine years ago on its equity interest pursuant to a Chapter 11 bankruptcy plan that was confirmed nearly ten years ago.

1

Newland's creditor, Defendant The Branham Corporation ("Branham"), now wants to collect its judgment against Newland obtained post-bankruptcy. At the time of Debtor's bankruptcy filing and Debtor's payment under its plan to Newland, Branham had only a colorable contract claim against Newland. Branham's contract claim became a judgment against Newland and Branham is aggressively trying to collect on its judgment.

Branham claims there are still undistributed bankruptcy estate assets belonging to Newland in Debtor's possession that are attachable (Debtor would be a garnishee defendant) or, in the alternative, undistributed bankruptcy estate assets vested in Newland upon confirmation of the plan, in which case Branham may collect directly against its judgment defendant, Newland. The assets are causes of action Debtor allegedly possessed against Newland and Newland's members. Branham sued Newland's members and insiders, as well as professionals involved in Debtor's chapter 11 case, in state court in part on the theory that certain distributions under the plan were illegally made. The Debtor filed a declaratory judgment action in this court asking to affirm and give preclusive effect to various orders entered in the chapter 11 case. The amended complaint filed in late summer, 2013 added a count seeking sanctions. Branham's counterclaim asks for permission to conduct discovery of the Debtor and for various orders of garnishment on property Branham claims the Debtor holds in which Newland allegedly has an interest.

The matter came before the Court for hearing on February 20, 2014 upon the Debtor / Plaintiff's motion to dismiss Branham's counterclaim. The parties were directed to file proposed findings and conclusions, which have been filed. Additional pleadings regarding those proposed findings and conclusions were filed up to March 12, 2014. The motion to dismiss presently before the Court and the related responses, proposed findings, briefs and other matters submitted to this Court refer to matters outside the pleadings. Resolution of the motion calls for the Court to do more than pass upon the sufficiency of the counterclaim; it requires the Court to consider provisions of the Debtor's confirmed plan. The motion to dismiss was filed over 60 days ago and the parties have had a reasonable opportunity to present all the material that is pertinent to

the motion. The Plaintiff's motion will be treated as a motion for summary judgment under Fed. R. Bankr. P. 7056.

### *Findings of Fact*

Boone County Utilities, LLC ("Debtor") was an Indiana limited liability company organized to provide utility (water and sewage) services to Boone County (Indiana) residents. Newland Resources, LLC ("Newland") owned 100% of Debtor. Debtor was regulated by the Indiana Utility Regulatory Commission ("IURC"). Prior to the formation of Debtor, Newland retained Branham in late 1995 to assist it in negotiating certain contracts and obtaining certifications needed to operate a waste water and water supply utility in Boone County, Indiana. (the "Newland – Branham Contract"). Newland agreed to pay Branham reasonable out of pocket expenses and a "success fee" based upon a formula.

In late 2001, the Board of Commissioners of Boone County (the "Commissioners") petitioned the IURC to revoke Debtor's certificate of territorial authority. Extensive hearings before the IURC resulted in the IURC making findings in March, 2003 which were critical of Debtor's practices and management. The IURC directed Debtor to do certain things and set a compliance hearing for Fall, 2003. Debtor filed its chapter 11petition in early September, 2003. The IURC in its compliance hearing and by written order entered in December, 2003 found that Debtor was in violation of certain regulatory statutes, rules and orders, including serious deficiencies regarding the capitalization of Debtor. As a consequence, the IURC took the further step of soliciting proposed plans to replace Debtor's management and to operate Debtor with new management.

Debtor had moved in its chapter 11 case to sell its assets less than a month before the IURC's order. A jurisdictional tug-of-war ensued as to whether it would be the bankruptcy court or the IURC that decided whether Debtor's assets would be sold, to whom and on what terms. The jurisdictional turf war ended when the IURC in February, 2004 stayed all proceedings before the Commission with respect to the sale of assets and noted:

3

> We note that the United States Bankruptcy Court has scheduled a hearing on the sale of Debtor assets for March 22, 2004. The Commission recognizes that the United States Bankruptcy Court has the full power and exclusive jurisdiction to conduct the sale of assets of Boone County Utilities, a Debtor in possession under the Bankruptcy Code. Therefore, the Presiding Officers hereby stay all proceedings before the Commission…

Debtor eventually withdrew its motion to sell, filed a new one, resolved all objections to the new motion, other than the objection of the Commissioners, and obtained authority to sell its assets to the Town of Whitestown for $4,200,000. The IURC did not object to the sale motion. The Court approved the sale motion in March, 2004 and the sale closed on July 20, 2004. The sale order was not appealed. At that point, the Debtor ceased operating as a public utility and all proceedings by the IURC against the Debtor ceased as well.

Debtor's plan divided claims and interests into six (6) classes. Newland's equity interest was treated in Class 6. Class 2, 3 and 4 claims were to be assumed by Debtor and assigned to Whitestown as part of the purchase. Administrative expense claims, administrative claims of professionals and priority tax claims were not classified but were to be paid from the proceeds of sale at closing or "as soon as practicable" after. Yet, another part of the Plan provided that Debtor would hold the proceeds from the sale until the Court approved "Claims and Administrative Expense Claims" and "orders payment of them". [Plan, p. 13]. "Property" was defined in the Plan as "…any interest or Claim of the Debtor in any kind of property or asset, whether real, personal, tangible, intangible or mixed". *Amended Liquidating Plan of Reorganization*, docket #123 (hereinafter, "Plan") p. 4. All of Debtor's scheduled "Property" was dealt with by the Plan. *Disclosure Statement Relating to Debtor's Amended Liquidating Plan of Reorganization*, docket # 124 (hereinafter, "Disclosure Statement"), p. 16, [Plan, p. 15].

Debtor's disclosure statement and plan clearly contemplated that the only "Property" that would be distributed under the Plan would be the proceeds from the asset sale to Whitestown, or, if the sale to Whitestown fell through, the proceeds from the asset sale to the highest bidder at auction. The plan provided Class 1 and 5 creditors would be paid in full and that there would be proceeds left to pay Newland on

4

account of its equity interest.  ("…the Plan calls for the Debtor to sell substantially all of its Property pursuant to the Purchase Agreement executed by the Debtor, Newland Resources, LLC and the Town of Whitestown…and to pay all of the Debtor's Administrative Expense Claims and all of the Claims of its Creditors in full" [Disclosure Statement, p. 8]; "…the Plan provides that Allowed Administrative Expenses and other Allowed Priority Claims will be paid in full and that the Claims of all of the Debtor's other Creditors will be paid in full through the sale of substantially all of the Debtor's Property to Whitestown pursuant to the Purchase Agreement or by sale procedure and auction approved by the Court" [Disclosure Statement , p 9]; "Newland shall receive all remaining proceeds from the purchase of the Debtor's Property by Whitestown after satisfaction and payment in full of Allowed Administrative Expense Claims, Allowed Professional Compensation and Reimbursement Claims, Allowed Priority Tax Claims, Class One Allowed Claims and Class Five Allowed Unsecured Claims" [Disclosure Statement, p. 12], [Plan, p. 12].

     It was clear from the "liquidating" plan that it would be sale proceeds – and only sale proceeds – that funded the Plan and creditors need look no further than sales proceeds to receive full payment of their claims and the balance from the sale proceeds would be paid to Newland as the sole equity holder.  Inexplicably, both the Disclosure Statement and the Plan made passing references to Debtor reserving the right "to enforce, waive or assign any and all Claims and/or causes of action under the Bankruptcy Code or non-bankruptcy law in the Bankruptcy Court or a state court of competent jurisdiction except Claims expressly waived, relinquished or released under this Plan or otherwise released or relinquished under the Plan or otherwise released or relinquished pursuant to an order of the Bankruptcy Court". [Disclosure Statement, p. 16], [Plan, p. 16].  Both also provided for the bankruptcy court to retain jurisdiction "to determine all causes of action…whether or not subject to action pending as of the date of confirmation…including …any right of the Debtor to pursue Claims and recover Property pursuant to the provisions of the Bankruptcy Code and non-bankruptcy law" as well as to approve a disbursing agent to disburse litigation and settlement proceeds. [Disclosure Statement, p. 18], [Plan, p.17].  Neither the Disclosure Statement nor the Plan specified any causes of action or claims to be pursued because the Plan proposed

5

to pay creditors in full.  Debtor's Schedule B (Personal Property) listed no claims against Newland, its members or insiders.

The Plan and Disclosure Statement contain ambiguities as to what happens to 'undistributed property', if any, after claims and interests are paid.  The "plan summary" section of the Disclosure Statement provides "Any of the Debtor's Property and the proceeds of its liquidation remaining after all Allowed Administrative Expenses and Allowed Creditors' Claims have been paid in full shall be retained by the Debtor" [Disclosure Statement, p. 8].  Yet in that same section, the general description how the Plan treats Newland's interest provides, "All Property of the Debtor not being sold to Whitestown shall re-vest" in Newland.  [Disclosure Statement, p. 9].  The "Reservation of Rights" section provides "Upon confirmation, the Debtor shall be re-vested with the Debtor's Property".  [Disclosure Statement, p. 17, Plan, p. 16].  The fuller description of Newland's treatment provides "Ownership of all of the Debtor's Property which is not the subject of the Purchase Agreement with Whitestown shall be revested in Newland…." [Disclosure Statement, p. 13. Plan, p. 12].   It is unknowable why these ambiguities existed since all of Debtor's scheduled property was sold to Whitestown. The Plan and Disclosure Statement also invoked §1123 and provided that plan confirmation pre-empted any non-bankruptcy law that required the IURC's approval or compliance with IURC "rules, regulations or decisions" related to the transfer of  Debtor's utility property or the discretion to deny transfer or assignment of Debtor's utility property.  [Disclosure Statement, p. 14] [Plan, p. 14].

Debtor did not schedule Branham as a creditor because Branham was not a creditor of Debtor.  Debtor was not a party to the Newland /Branham contract.  Branham- although not a creditor of Debtor- conditionally objected to confirmation of the Plan because it did not specifically denote Branham as a Class 5 (unsecured) creditor.  Neither the IURC nor the Commissioners objected to the Plan.  The Court confirmed the Plan and its written "Order Confirming Chapter 11 Plan" was docketed on September 14, 2004 (the "Confirmation Order"). [1]

---

[1] Branham first appears in the case by counsel on September 9, 2004, five days before the confirmation hearing.  Docket #233 in the main bankruptcy case (03-16707) reads "Objection (conditional) filed by The Branham Corporation…" but a click on that link shows that the actual document filed was a duplicate appearance for Brahman's attorney. The Confirmation order, however likewise refers to Branham's

6

Branham filed four (4) formal claims in the bankruptcy case. The first claim related to amounts owed Branham under the Newland/Branham Contract. The second and third claims amended the first claim. The fourth claim was based on the equitable theories of unjust enrichment and quantum meruit and was filed after the expiration of the last claims bar date. Branham's relief from stay motion was filed before the last claims bar date and a "Proposed Complaint" bearing the caption of a complaint to be filed in Boone County against the Debtor, Newland and Newland's members was attached. Branham requested the proposed complaint to be deemed an informal proof of claim, to which its fourth and late proof of claim related back. Debtor objected to all of the claims because it was not a party to the Newland/Branham Contract and Debtor did not owe Branham any money. The Court sustained those objections, declined to find that the proposed complaint was an "informal" proof of claim, and disallowed all four claims. The Court also found that the fourth claim did not relate back to any of the previous three because it was based on new theories of recovery. Both the District Court and the Court of Appeals for the Seventh Circuit affirmed the decision. Branham never moved either the Bankruptcy or the District Courts to stay payment of the distributions due to Newland under the confirmed plan. Nor did Branham file a prejudgment attachment or similar remedy in either federal or state court. By October, 2005, Newland received all it was to receive under the Plan which amounted to about $3 million.

Branham has been tenacious in collecting its claim, now judgment. It sued Newland in state court and in November, 2007 Branham obtained a judgment of $397,853.92 (the "517 Case"). In that case, it has moved for proceedings supplemental and named Debtor, its bankruptcy attorneys, and Newland's members and attorneys as garnishee defendants to answer to any property in their possession in which Newland holds an interest. Branham has since dismissed Newland's and Debtor's counsel from this action. Branham also has sued Newland, its members, insiders, attorneys and Debtor's bankruptcy attorney alleging, in part, that the distributions made by Debtor to Newland under the confirmed Plan were unauthorized under the Plan and are void *ab*

---

objection. Branham in its motion for relief from stay (docket #239) filed on the day of the confirmation objected to the Plan's failure to list Branham's claim in the Plan.

7

*initio* and in violation of certain IURC orders, operating agreements and applicable Indiana business law (the "001 Case"). Branham has since dismissed Newland's and Debtor's counsel from this action.

Debtor's complaint here seeks a declaratory judgment that this Court had exclusive jurisdiction over the sale of Debtor's assets and that all distributions under the Plan were authorized and lawful. Resolution of whether payments made by Debtor to Newland were authorized , whether they violated IURC orders and applicable Indiana business law , whether the Plan pre-empted application of such non-bankruptcy law and whether there are other undistributed assets of Debtor in which Newland has an interest requires a review and interpretation of the Plan. Aware of such, the Court in October, 2012 , in its order dismissing Branham's attorneys from this adversary, provided:

> This Court has determined it shall exercise its jurisdiction to interpret and enforce all of its orders and rulings with respect to Boone County Utilities, LLC's chapter 11 Bankruptcy Case from the petition date of September 8, 2003 up to and including all distributions and transfers made by Boone County Utilities, LLC to Newland Resources, LLC and all matters respecting the Indiana Utility Regulatory Commission's involvement in the Debtor bankruptcy, to enter such further orders as is necessary to rule upon and, if appropriate, grant the relief requested in this adversary proceeding.

Branham's counterclaim seeks authority to (1) conduct discovery on Debtor, to determine what assets Debtor still has, whether any of them belong to Newland and what distributions Debtor has made of the assets. The counterclaim also asks to garnish property owned by Newland but in the possession of Debtor. If the Court determines that Debtor still holds assets not distributed under the Plan, Branham seeks to garnish them. If the Court determines any such assets vested in Newland, Branham seeks an order of attachment.

## *Conclusions of Law*

### *Summary Judgment Standard*

A motion seeking summary judgment in federal bankruptcy court is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56 by reference. Where there is "no genuine dispute as to any material fact"

then the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is appropriate when, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). When a movant's motion is adequate to support the basis of movant's claims, it is the non-movant's burden to demonstrate a genuine issue of fact for trial. *Crawford v. Countrywide Home Loans, Inc.* 647 F.3d 642, 647 (7th Cir. 2011). The non-moving party must point to specific evidence, that would be admissible at trial, which "could support judgment in [non-movant's] favor" in order to avoid entry of summary judgment against non-movant. *Marr v. Bank of Am., N.A.* 662 F.3d 963, 966 (7th Cir. 2011).

      The Court can a make short work of Branham's assertion that the payments to Newland were not authorized. Branham asserts that the distributions made to Newland under the Plan were not authorized because the last paragraph of Section 6.1 of the Plan provided that the sale proceeds would be retained until the Court approved the "Claims and Administrative Expense Claims" and ordered payment of them, and Debtor failed to obtain such an order. Bankruptcy Code §101(5) defines "claim" to mean "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or right to an equitable remedy for breach of performance….". "Claims" in this paragraph refers to Class 1 (Priority) and Class 5 (unsecured) claims because payment of all other types of claims (professional, priority tax, Classes 2, 3 and 4) was already provided for in the preceding paragraphs of Section 6.1 that said they would be paid directly from the sale. The Plan contemplated that payment of Class 1 and Class 5 claims to which Debtor objected would not be made until the Court allowed them and ordered their payment.

      Equally noteworthy is that the last paragraph of Section 6.1 does not refer to payment on account of an "interest"; it only refers to payments of "claims". Bankruptcy Code §101(17) defines "equity security holder" to mean "holder of an equity security of the Debtor". So, the Plan did not require Debtor to obtain a separate order directing payment to Newland on account of its equity interest. Even if the last paragraph of

9

Section 6.1 could be read to require Debtor to obtain such an order as to Newland, Debtor paid Newland a first distribution of $2,500,000 shortly after Plan confirmation and still held sufficient funds in reserve as of May, 2005 to pay other unpaid claims and Branham's claim arising from the Branham/ Newland Contract in full.  All of Branham's claims ultimately were disallowed and therefore any distributions that occurred after that point are of no relevance.

The Court can also make short work of any alleged claims Newland may have against Debtor.  Branham is a judgment creditor of Newland and at best has only the rights of an assignee of Newland's interest in the Debtor.  Ind Code §23-18-6-7(b); *Brant v. Krilich*, 835 N.E.2d 582, 592 (Ind. Ct. App. 2005) ("the judgment creditor of member's interest in LLC has only the rights of an assignee of the member's interest in the LLC").  Yet, even if Newland had any additional claims against Debtor, those were expressly waived by Newland and Branham (as Newland's judgment creditor) is enjoined from bringing them under the express terms of paragraph 11.2 which provides, in part, that "All holders of Claims and Equity Interests, and their successors *and assigns*, shall be permanently enjoined after the Confirmation Date from asserting against the Debtor, or any of the Debtor's Property, any Claims or interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date".  [italics added] [Plan, p. 19].

Nor can Branham itself sue Debtor to enforce any violation of Indiana utility law.  The IURC's March, 2003 order suggests that Debtor was in violation of certain Indiana *utility laws* before its chapter 11 case was filed.  *Enforcement* of the Indiana public utility statute is a function of the utility regulatory commission.  See, Ind Code §8-1-1-3.  Nothing in the utility statute gives a party a private right of action to directly sue a public utility for capitalization deficiencies or any of the other deficiencies cited in the IURC's March, 2003 order.  At most, such private rights of action are reserved for *consumers* seeking damages for discriminatory service or rate practices.  *Foltz v. City of Indianapolis*, 130 N.E. 2d  650, 657 (Ind. 1955).  By the IURC's "stand down" order of February, 2004, the IURC stayed all proceedings in the case from which the March, 2003 and December, 2003 orders arose.  That stay was never vacated.  Any authority the IURC had over Debtor ended when the Debtor ceased operating as a public utility in

10

March 2004 after the sale to Whitestown.  There is no authority under the utility regulatory statutes for any party to enforce any IURC orders in this action.

Thus, what the Court is left to determine is whether Debtor retained any claims against Newland and whether those claims are undistributed property under Debtor's Plan.  If such property exists, recovery would  be distributed to Newland (after payment of professional fees for liquidating the property) on account of its equity interest as creditors with higher  priority claims were paid in full, creating a pot of money from which Branham could satisfy its judgment.

Branham was an active participant in the Debtor's chapter 11 case.  Branham's objection to the Plan was that it did not denote Branham as a class 5 (unsecured) creditor.  Branham did not object to the fact that the Plan failed to provide for prosecution of claims against Newland.  Branham filed a stay relief motion in the chapter 11 case on September 14, 2004.  Attached to that motion was a copy of the complaint Branham intended to file in state court against Newland and Newland's members, detailing all of the allegations and theories Branham claimed.  As of September 14, 2004, Branham had knowledge of the factual allegations underpinning its claims.  The Debtor was owned entirely by Newland and there was no likelihood of the Debtor bringing claims against Newland.  Nor were creditors insisting that the Debtor do as much because they were to be paid in full under the Plan.  Recognizing this anomaly, Branham, as a "party in interest" that had a pecuniary interest in the bankruptcy, could have moved for the appointment of a trustee under §1104 of the Bankruptcy Code.  It failed to do so.  The proposed complaint attached to the stay relief motion also alleged that the Debtor would be liquidated and that funds would be paid to Newland and asked for a receiver to be appointed to hold the funds until Branham's success fee was determined.  Branham could have sought pre judgment attachment in the state court suit to protect its interests against Newland but apparently failed to do so. Whatever the remedy, Branham was aware of the contents of the IURC's March 2003 order and of the alleged claims the Debtor had against Newland no later than September, 2004.  To the extent the undercapitalization claim was an avoidance claim the Debtor held against Newland, the (2) year time frame in which to file that claim under §546 has long passed.

11

All of the Debtor's property was dealt with by the Plan. Assuming that causes of action were preserved under the Plan and that they revested in the Debtor upon confirmation, the order confirming the chapter 11 plan is *res judicata* as to all issues which were decided and which could have been decided before confirmation. The blanket reservation of rights provided simply that the Debtor retained any and all causes of action under the Bankruptcy Code or non-bankruptcy law. This blanket reservation is insufficient to preserve preference, fraudulent transfer, conversion or other state law claims against Newland. See, *In re G-P Plastics, Inc.*, 320 B.R. 861, 867-68 (E.D. Mich. 2005).

The Court understands Branham's frustration with the failure to collect its judgment. The claims purportedly held by the Debtor were claims against Newland and Newland's members and Newland, as 100% member of the Debtor, was not going to authorize the Debtor to sue Newland and its members. Newland knew Branham held a claim against it. Newland received more than enough from the chapter 11 case to pay Branham's claim. Branham's current counsel has been creative in devising theories upon which the chapter 11 case can be used to aid collection of that judgment. There were ambiguities in the Plan. Unfortunately, current counsel has represented Branham only since December, 2013. Branham's prior missteps nearly a decade ago during the pendency of the chapter 11 case and in the state court case have not aided his cause. Nonetheless, the Plan has been consummated and a final decree entered. The Court grants the Debtor's/Plaintiff's motion to dismiss, treated as a motion for partial summary judgment. Branham may not go forward with garnishment proceedings against the Debtor, since Newland is enjoined from doing so. Partial summary judgment will be entered accordingly.

# # #

Distribution:

John E. Bator, Attorney for the Plaintiff
Michael W. Hile, Attorney for the Defendant
Michael A. Kiefer, Attorney for the Defendant
Thomas N. Eckerle