SO ORDERED: September 17, 2014.



_____
**Robyn L. Moberly**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BOONE COUNTY UTILITIES, LLC ) | CASE NO. 03-16707-RLM-11 |
| ) | |
| Debtor ) | |
| _____ ) | |
| ) | |
| BOONE COUNTY UTILITIES, LLC ) | |
| ) | |
| Plaintiff ) | Adversary Proceeding |
| vs. ) | No. 12-50128 |
| ) | |
| THE BRANHAM CORPORATION ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

**ORDER GRANTING MOTION TO QUASH SUBPOENA AND
PROTECTIVE ORDER**

***Background***

The current legal battle between The Branham Corporation ("Branham") and Boone County Utilities ("BCU") emanates from Branham's continuing efforts to collect a judgment it holds against BCU's sole member, Newland Resources, LLC. ("Newland").

Branham wants to take a 30(b)(6) deposition of a representative of BCU to accomplish its purpose and conduct other discovery, and BCU is resisting Branham's efforts. In state court, Branham has initiated proceedings supplemental against Newland and presumably joined BCU as a garnishee defendant. Although the exact procedural posture of the state court action has not been detailed for this court, it appears that this would be the correct state court proceeding to get to where we are today.

## *Discussion*

### *Proceedings Supplemental*

Proceedings supplemental concepts originate in equity. *Stuard v. Jackson & Wickliff Auctioneers, Inc.*, 670 N.E.2d 953, 955 (Ind.Ct.App.1996). "These proceedings allow the creditor to discover assets, reach equitable and other interests not otherwise subject to levy and sale at law, and to set aside fraudulent conveyances." *Id.*

The procedures set forth in Indiana Trial Rule 69 and in statutes are the result of these equitable concepts. Proceedings supplemental to execution are detailed in Indiana Trial Rule 69, which states:

> "(E) Proceedings supplemental to execution. Notwithstanding any other statute to the contrary, proceedings supplemental to execution may be enforced by verified motion or with affidavits in the court where the judgment is rendered alleging generally:
> (1) that the plaintiff owns the described judgment against the defendant;
> (2) that the plaintiff has no cause to believe that levy of execution against the defendant will satisfy the judgment;
> (3) that the defendant be ordered to appear before the court to answer as to his non-exempt property subject to execution or proceedings supplemental to execution or to apply any such specified or unspecified property towards satisfaction of the judgment; and,
> (4) if any person is named as garnishee, that garnishee has or will have specified or unspecified nonexempt property of, or an obligation owing to the judgment debtor subject to execution or proceedings supplemental to execution, and that the garnishee be ordered to appear and answer concerning the same or answer interrogatories submitted with the motion."

As was recited in this court's *Findings of Fact and Conclusions of Law on Plaintiff's Motion to Dismiss* entered on April 1, 2014, BCU filed Chapter 11 bankruptcy on September 8, 2003. Its only member then, and now, was Newland LLC. Subsequent to the confirmation of BCU's Chapter 11 Amended Liquidating Plan of

pg. 2

Reorganization on September 14, 2004 and subsequent to the distribution of all of the remaining assets of BCU to Newland under the Plan more than nine years ago, Branham obtained a judgment against Newland. Branham is aggressively pursuing its rights against Newland to collect its judgment and has targeted the BCU bankruptcy proceeding as a possible source of funds to satisfy that judgment.[1]

On August 5, 2013, BCU filed its *Amended Complaint* against Branham asking this Court to enter a declaratory judgment that the Amended Liquidating Plan of Reorganization, as well as a host of other minute details and matters occurring in the bankruptcy proceeding, is not subject to challenge or collateral attack by Branham. Additionally, BCU requests sanctions against Branham for actions which BCU states "deliberately, intentionally and willfully attacked the Orders of this Court, the U.S. District Court and the Seventh Circuit Court of Appeals without cause or justification, and deliberately misled the Boone Circuit Court in the Complaint, Pro Supp Motion and subsequent pleadings and hearings".

Branham's *Answer* is equally thorough and contains a preview of its arguments in this matter. Branham filed a *Counterclaim* requesting this Court grant it relief to conduct discovery and to garnish Newland's economic interest in BCU.

The current issue before this court is whether Branham should be allowed to take the 30(b)(6) deposition of a representative of BCU and conduct paper discovery. The answer to this question is a narrow and qualified yes. To answer this question requires an understanding of the rights a judgment creditor of a limited liability company acquires when it executes against the interest of the debtor.

### *Rights of a Judgment Creditor of an LLC*

Indiana Code § 23–18–6–7 states that a judgment creditor may seek a charging order against a limited liability company upon application to the court. To the extent a charging order is granted, the judgment creditor has only the rights of an assignee of the member's economic interest (the right to payment and distribution) in the LLC and cannot become a member via execution. *Brant v. Krilich,* 835 N.E.2d 582, 592 (Ind. Ct.

---

[1] A more detailed description of the relevant procedural history of the BCU bankruptcy is contained in the Court's April 1, 2014 Order.

pg. 3

App. 2005); *Crider v. Crider*, 53A05-1307-DR-358, -- N.E. 3d -- , 2014 WL 4210734 (Ind. Ct. App. Aug. 26, 2014).  Both parties agree that Branham has a "charging order" against Newland out of the state court in Boone county, Indiana.

Article 18 of Title 23 of the Indiana Code, known as the Indiana Business Flexibility Act, controls the creation and operation of LLCs in Indiana. Indiana Code § 23–18–6–2 states that the "interest of a member in a limited liability company is personal property."  Since the interest in an LLC is personal property, it is subject to execution.  However, the execution against the interest in an LLC would be indistinguishable from a charging order against an LLC because of the limitation of the term "interest" by the General Assembly.

All LLC statutes provide that a membership interest in a LLC is the member's personal property, and members generally have been found to have no direct interest in the LLC's assets; this includes members who own all the interests in single member LLCs.  *Callison & Sullivan, Limited Liability Companies,* § 4:1 *(2014 ed).*  Specifically, in Indiana, Indiana Code § 23–18–1–10 defines "[i]nterest" as a "member's economic rights in the limited liability company, including the member's share of the profits and losses of the limited liability company and the right to receive distributions from the limited liability company."  Thus, while personal property is subject to execution according to Indiana Code § 34–55–8–2, the interest here is limited by I.C. § 23–18–1–10 to the *economic rights and nothing more. Crider v. Crider*, <u>id</u>.

Through execution Branham may not receive any of Newland's rights to participate in management, nor may Branham inspect the books or records of Newland. *See Callison,supra,* § 4:5 at 59 (stating that judgment creditors obtain no right to participate in management, inspect the books or records, or to force a sale of the membership interest). The effect of this is essentially that a charging order is the only remedy for a judgment creditor against a member's interest in an LLC, albeit a very limited and possibly unsatisfactory remedy.  Therefore, Branham is not entitled to membership in Newland, is not entitled to participate in corporate actions, is not entitled to force a distribution, may not insist upon inspecting Newland's books and records, may not participate in the management, governance, or direction of Newland, and does

not acquire any rights to Newland's membership in BCU or to participate in corporate actions, management, governance, or direction of BCU.

### Scope of Discovery under Fed. R. Civ. P 26

Now, Branham seeks to depose a BCU representative under Fed. R. Civ. P. 30(b)(6) regarding (1) all facts respecting BCU's corporate governance from commencement of BCU's chapter 11 case to present ("corporate governance"); (2) all facts respecting BCU's operations post confirmation and (3) all facts asserted in BCU's amended complaint ("blanket request"). BCU has moved to quash the subpoena.

Branham has cited the court to authority for the proposition that discovery is very broad. Conversely, BCU has cited the court to authority for the proposition that discovery must be relevant, must be designed to lead to admissible evidence, and should not be unduly cumbersome or burdensome upon the recipient. Ultimately, there is not just one universe of discovery at issue. The first level of discovery sought by Branham is related to defending itself in this action. The second level of inquiry is to what extent Branham's valid interest in attaching the economic interests of Newland in BCU, if there are any, may be pursued in state court without running afoul of the injunction entered as part of the Confirmed Amended Liquidating Plan of Reorganization in BCU's bankruptcy case. The Court will address the discovery relevant to securing information and evidence to defend itself in this action brought by BCU for sanctions.

Fed. R. Civ. P. 26(b)(1), limits the scope of discovery, including Rule 30(b)(6) depositions, to any non-privileged matter that is relevant to the party's claim or defense. Relevant information need not be admissible but only reasonably calculated to lead to the discovery of admissible evidence. *Dixon v. Experian Information Solutions, Inc., et al*, 2014 WL 2881589 at *9 (N. D. Ind. June 25, 2014). A court may, for good cause, issue a protective order under Fed. R. Civ. P. 26(c) if the discovery sought will cause "undue expense". Hence, an inquiry into what the outer limits of Branham's rights might be as a creditor of Newland is required to determine what might be relevant or reasonably calculated to lead to admissible evidence in its quest to obtain Newland's distributions from BCU.

pg. 5

### *BCU's Pre Confirmation Assets and Claims*

BCU's amended complaint is not fact sensitive; it seeks a declaratory judgment as to the validity of certain court orders already entered, but it also is asking for sanctions against Branham for allegedly violating this court's injunction.  This Court was clear in its 2012 *Order* that it limited its role to interpreting and enforcing orders entered in this case and that the end point of that inquiry would be when BCU paid to Newland its distributions under the confirmed plan.  The *Partial Summary Judgment* determined that all of BCU's assets were distributed under the confirmed plan, as stated in the plan, and that there were no other BCU assets to pursue or distribute as of the date of distribution to Newland.  While Branham has taken issue with the Court's finding on matters which Branham did not brief, interpretation of this Court's orders is necessary and appropriate to deciding the issues which are being presented.  Specifically, the confirmed plan states in Article VIII "[a]ll property of Debtor is dealt with by this Plan." Although the Plan also used the boiler plate language that any undistributed property shall revest in the Debtor after confirmation, the specific language that all property was dealt with in the Plan is controlling and is not in conflict with the "revesting language". Since the Plan unequivocally stated that all property of the Debtor was dealt with by the Plan, there was no property left to re-vest in the Debtor.

To further make the point, the *Partial Summary Judgment* also determined that, even if BCU was still holding claims against third parties which pre-dated the distributions to Newland, Newland would have no claim or right to them.  The distributions made pursuant to the Plan were in "full and final satisfaction, settlement, release, and discharge as against the Debtor of any and all Claims or interests in the Debtor… including, without limitation, any Claim or Equity Interests accrued on or before the Confirmation Date, whether or not (i) a proof of claim or interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim or Equity Interests is allowed under Section 501 of the Bankruptcy Code, or (iii) the holder of such Claim or Equity Interest has accepted the Plan."  Branham has alleged there are causes of action that had accrued to BCU against members of Newland (and possibly others) that were never identified in the bankruptcy filing and never pursued by the Debtor in

pg. 6

Possession (Branham has never identified them to the Court but apparently wants to investigate them).   Newland, as the Equity Interest holder, released claim to any assets of BCU or interest in BCU as part of the confirmed plan.  Newland may not pursue, or direct BCU to pursue, any claims which accrued before the confirmation of the amended plan of liquidation and receipt of assets from BCU by Newland.  Branham, as a mere creditor of Newland post-BCU bankruptcy, may not interrogate BCU on any matter which preceded the confirmation order on BCU's Amended Liquidating Plan of Reorganization and distribution of assets under the Plan to Branham.

Further, Branham was not a creditor of BCU, a ruling of this Court which was ultimately affirmed by the Seventh Circuit Court of Appeals. In Branham's response to the *Motion to Quash*, Branham did not identify any potential defense to BCU's action against it which requires investigating potential claims BCU might have had at the time Newland released all claims against Branham.  Branham's only avenue to BCU is through Newland's economic rights. Newland's economic rights do not include any claims or interest in BCU prior to the confirmation order.

### *BCU's Post Confirmation Assets and Claims*

However, if BCU holds claims that arose after the confirmation order and after the asset distribution which Newland received in exchange for its release, against any entity, then it appears Newland, as the sole member of BCU, may pursue those if Newland's members so choose.[2]   Assuming there are post-confirmation/distribution causes of action belonging to BCU, Branham is not Newland, and not a member of Newland and Branham is not a creditor or a member of BCU.  Branham may not directly pursue those causes of action, if they exist.  Branham's only ability to collect against its judgment defendant, Newland, is to receive Newland's distributions from BCU.  Branham may not direct Newland to pursue causes of action or claims which Newland does not elect to pursue in order to generate funds to pay to Branham.  If, in the state court action, Branham is successful in arguing that it is relevant to Branham's attempts to collect its judgment against Newland to conduct discovery as to Newland's economic

---

[2]   There are obvious issues of statutes of limitation and corporate governance which are not necessary for this Court to address at this time.

pg. 7

interests in BCU's assets acquired post-confirmation, this Court's discharge injunction entered in the confirmation order does not prohibit that inquiry should the state court judge decide it is appropriate discovery. However, for purposes of defending against the request for sanctions in this court, the court finds that such discovery is not relevant.

### *Branham is Not Entitled to Inquire into Matter of Corporate Governance*

Branham's deposition request is "aimed at understanding BCU's corporate governance and the degree to which it was followed in this case, the reopening of the bankruptcy case and in the chapter 11 case generally," quoting from Branham's Brief filed in this matter. Citing Bankruptcy rules 7009, 7012, and 7056 as authority, Branham intends to inquire whether BCU had the corporate authority at any and all times during the bankruptcy to take the steps that it took from filing until the present time. Bankruptcy Rule 7009 states that it is not necessary to allege authority to sue or be sued, except to establish the court's jurisdiction. Bankruptcy Rules 7012 and 7056 do not address corporate structure as a defense and Branham has given no explanation of the significance of these rules in this case. The cited Bankruptcy rules do not substantively support Branham's argument that it may inquire into corporate governance issues at any stage of the Chapter 11 case. During the pendency of the chapter 11 case, all corporate actions were taken under the authority of this court and subject to any objections of creditors and other parties at the time. There were no objections.

Pursuant to Indiana Code §23-18-8-2, Branham is specifically foreclosed from pursuing an inquiry into the corporate governance authorizing the bankruptcy from its filing to the present time as a defense to this action. Indiana Code §23-18-8-2 provides:

> Sec. 2. A determination that a member or manager does not have authority to sue on behalf of the limited liability company under section 1 of this chapter may not be asserted for the following:
> (1) As a defense to an action brought by the limited liability company.
> (2) As a basis for the limited liability company to bring a subsequent suit on the same cause of action.

BCU's corporate authority to file this bankruptcy back in 2003 must have been raised at the time the bankruptcy was filed, by a creditor or party in interest. No one raised that issue. The issue has been waived. Further, as a mere assignee of the distributions from Newland, Branham is far afield of permissible discovery to subject a representative of BCU to a deposition about the decisions made, by whom, with what authority and for what reason such decisions were made by BCU at any point from the filing of the bankruptcy through and including the present action both for substantively collecting its judgment against Newland and for defending itself in this action. Branham contends that the common law on this issue has been abridged by Indiana Code §23-1-22-5 for corporations but has not been so abridged for limited liability companies, which is inaccurate for the reasons just stated.

As an example of a matter Branham contends is relevant and discoverable is the status of ownership in 2012 of an LLC that was in a related position to Newland in 2004. Branham argues that the Plan was signed by Greenleaf, LLC, a Cornelius Lee Alig-related entity that purportedly is owned 50% by Mr. Alig (who, during significant time in this matter, after April 29, 2012, was a debtor in chapter 7 and whose assets were therefore "owned", according to Branham, by the chapter 7 trustee). In fact, if there is any relevancy to Mr. Alig's bankruptcy filing in 2012, it would not be because the Trustee is now the owner of Mr. Alig's membership share in Greenleaf. In fact, a Trustee does not become the owner of a member's share in a limited liability company upon the filing of the personal bankruptcy of a member. "There is no reason why our courts should disregard the intent of the General Assembly to protect the close-knit structure of a LLC and violate the other members' interests and rights by declaring that they must accept a judgment creditor of a member into full membership with all the rights appurtenant thereto when the judgment debtor could not transfer those rights himself." *Brant v. Krilich,* supra, *at FN 20.*

### Branham May Not Challenge Plan Distribution under Rule 3020(e)

Another example of an area into which Branham argues it should be allowed to conduct discovery is the $2.5 million distributed in contravention of Fed.R. Bankr. P. 3020(e) which provides that an order confirming a chapter 11 plan is stayed until the

expiration of [then, in 2004] 10 days "unless the court orders otherwise".  Nothing in the plan specifically provided that the provisions of the plan were to have taken effect immediately, notwithstanding Rule 3020(e).  Nothing in the confirmation order provided for immediate implementation of the provisions of the plan.  Arguably, BCU jumped the gun when it paid Newland.  But, to hold Newland "in contempt" for this shortcoming, as Branham suggests, is baseless.  First, Rule 3020 (e) is not an order but a procedural rule by which the provisions of the Code are implemented.  One is held in contempt only for violation of a court order and nothing in the confirmation order provided for BCU to wait ten days to distribute funds, either.  Second, any procedural misstep was harmless because BCU retained more than enough funds in reserve as of May, 2005 to pay in full the amount owed to Branham under the Newland/ Branham contract (not yet reduced to a judgment).  Finally, failure to follow Rule 3020 (e) is not Branham's argument to make.  Branham was not a judgment creditor of Newland's at the time the plan was confirmed and the first $2.5 million distributed.  Its remedies were limited to its attempts to pursue Newland in a non-bankruptcy forum.  Its remedies did not include objecting to a distribution under a plan in which it was not a creditor.  Furthermore, Newland willingly accepted the funds without waiting the 10 days and effectively waived any argument with respect to Rule 3020 that a future assignee to its economic interest may have.

### *The Plan Complied with Applicable Code Provisions and is Binding on Newland and its Judgment Creditor, Branham*

In its April 1, 2014 order, the Court found that, by the terms of the Plan, all of BCU's property was dealt with by the Plan and that the provisions of the confirmed plan were *res judicata* as to all issues which were decided and which could have been decided before confirmation, including whether BCU held causes actions against Newland or other persons or entities.  The effect of confirmation of a chapter 11 plan is set forth in §1141(a) which provides that the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor , equity security holder, or general

pg. 10

partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

During oral argument on July 30, 2014, Branham argued that the plan failed to include certain mandatory provisions under the bankruptcy code and therefore the plan is not *res judicata* as to those provisions, citing *In re Escobedo*, 28 F.3d 34 (7th Cir. 1994).  In *Escobedo,* the chapter 13 trustee objected to the debtor's plan that proposed to pay $25 a month for 36 months on the basis that it failed to address more than $24,000 in administrative and priority tax claims.  Despite no objection by the debtor, the confirmed plan was not modified to provide for payment of the tax and administrative claims and the debtor continued to pay $25 a month.  Nearly five years after confirmation, the chapter 13 trustee moved to modify the plan accordingly or to dismiss the plan.  The debtor argued that confirmation of the plan was *res judicata* and binding on the tax and administrative claimants.  The Seventh Circuit Court of Appeals affirmed the dismissal on the basis that the plan should not have been confirmed in the first place because a prerequisite to confirmation is that the plan must comply with the provisions of the code under §1325(a)(1).  One of those provisions was the mandatory provision in §1322(a)(2) that required the plan to provide for full payment of all priority tax claims and the confirmed plan failed to so provide.  The court concluded that the plan was "invalid for failing to include the mandatory provisions of §1322(a)(2), and has no *res judicata* effect as to the omitted priority claims"  *In re Escobedo,* at p. 35.

Like chapter 13 plans, a chapter 11 plan must meet certain prerequisites to be confirmed.  The most basic of those prerequisites is that the plan "complies with the applicable provisions of this title".  11 U.S.C. §1129(a)(1).  Among the "provisions of this title" is §1123(a)(5)'s mandatory requirement that, "notwithstanding  any otherwise applicable non bankruptcy law", the plan shall provide for adequate means for its implementation, and §1123(a)(5) supplies a non-exhaustive list of such means of implementation. Thus, to the extent applicable non-bankruptcy law would prohibit or impair a debtor's ability to implement its plan, such applicable non-bankruptcy law is preempted by §1123(a)(5). This section recognizes that a proper purpose of chapter 11 is to reorganize and that there should be "some preemptive intent in favor of restructuring, which would preempt a state regulator's absolute veto power over a

pg. 11

bankruptcy restructuring". *In re Pacific Gas & Electric Co.*, 273 B.R. 795, 812 (Bankr. N.D. Cal. 2002). This statutory preemption, however is not limitless. First, the statute allows preemption only to the extent necessary for implementation of the plan. Second, the statute does not preempt laws protecting public health, safety and welfare. Third, the statute cannot preempt non-bankruptcy laws defining and protecting the property rights of third parties. *In re Manchester Oaks Homeowners Association, Inc.,* 2014 WL 961167 at *11 (Bankr. E. D. Va. March 12, 2014); *In re Irving Tanning Co.,* 496 B.R. 644, 660 (1st Cir. B.A.P. 2013).

   Branham put forth in the hearing an argument as to why BCU's confirmed plan has no *res judicata* effect. The Court understands Branham to argue that, if the debtor's corporate governance documents are to be altered or modified by the plan in order to implement the plan and allow for distribution under the plan which is not in accordance with the distribution provisions under Indiana's LLC statute (Ind Code 23-18-6-1, et seq.) then it was mandatory to provide for such in the plan under §1123(a)(5)(j). In effect, if BCU wanted to preempt applicable state LLC law governing distributions, it was mandatory for it to include that in its plan. And so the argument goes, BCU's plan did not so provide and therefore state LLC law was not preempted and the 'unlawful' distributions can be disgorged. Indeed, Branham's counsel argued that BCU rode through with its existing LLC arrangements applying to it post confirmation and it needed to live by those liquidation provisions of the LLC statute unless it altered it under section 1123 and in the plan, and it wasn't there. So at a minimum the plan should be construed as though it's still an LLC and the distribution is subject to the requirements of the LLC statute which requires one to disgorge certain amounts that were inappropriately distributed previously or at least take credit for them again before you receive them, and none of that was done. It was not liquidated in accordance with the existing law of its existence. [July 30, 2014 hearing transcript, p. 30, lines 4-14, ECF #142]. Branham's counsel later concluded, that " [BCU is] still under the same corporate governance going forward, and when they don't follow the statute which governs their existence, they're acting ultra vires as an LLC and I get to challenge that". [transcript, p. 36, lines 8-11].

The Court has difficulty with this argument.  Even if distribution under the plan was contrary to the LLC statute, all BCU was required to do under the plan was to provide adequate means for the plan's implementation and distribution of the sale proceeds.  It did so.  Article V titled "Provisions Governing Distributions" and Article VI titled "Means for Execution of the Amended Plan" collectively provided that distributions would be from the $4.2 million in sale proceeds and how those proceeds were to be distributed.  Paragraph 6.2 of Article VI even provided that "[t]he Confirmation Order will supersede any law, regulation or rule that might otherwise apply to the sale of the Debtor's assets and the implementation of the Plan".  "Implementation of the plan" clearly includes distribution of proceeds thereunder and the plan explicitly provided that any applicable non-bankruptcy law to the contrary was preempted.  Thus, BCU was not required to change its corporate governance documents to provide for distribution; the plan did that and clearly provided for distribution that was contrary to distribution under Indiana LLC law, something it was allowed to do under §1123(a)(5)(D).  And, Branham is barred from asserting any challenge to BCU's corporate governance because it only has the rights of an assignee of Newland's economic interest in BCU which does not include corporate governance matters.

The plan was to be implemented by distributing the sale proceeds.  The plan clearly set forth the means for distribution and implementation.  Preemption was appropriate under §1123(a)(5) because it was necessary for implementation of the plan and it did not involve preemption of non-bankruptcy laws protecting public health, safety and welfare or laws defining and protecting the property rights of third parties. There were no mandatory provisions under section 1123 that the plan failed to include and therefore Branham's reliance on *Escobedo* is misplaced.  The plan was confirmable because it complied with the provisions of the code as required under §1129(a)(1).  Its provisions are binding on Newland, and, as Newland's judgment creditor, Branham.

### *Conclusion*

Based on the foregoing, the Court GRANTS BCU's motion to quash the Rule 30(b)(6) subpoena to the extent it seeks to inquire into pre-confirmation matters as addressed herein or BCU's corporate governance matters.  BCU's motion also asks for

pg. 13

a protective order with respect to interrogatories propounded to it by Branham, Branham's request for admissions and Branham's requests for production of documents.  At the July 30th hearing, it was noted that Branham has not yet moved to compel this written discovery but that BCU nonetheless seeks a protective order from producing it on the same grounds as its motion to quash.   Hence, the Court GRANTS BCU's motion for protective order and finds that BCU need not produce any discovery with respect to BCU's corporate governance, any facts respecting BCU's pre-confirmation operations, claims or assets.  To the extent Branham's deposition or written discovery pertains to BCU's post confirmation activity, assets or claims, such discovery shall be sought in the state court action.

# # #

Distribution:
John E. Bator, Attorney for BCU
Michael W. Hile, Attorney for Branham